# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| JAMES MELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:11-CV-46-TLS |
| | ) | |
| TIPPECANOE COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff James Melton has sued his former employer, Tippecanoe County, for failing to pay him a proper wage for all hours he worked in his non-exempt salaried position from July 2009 to September 2010. The Plaintiff asserts that the Defendant violated the Fair Labor Standards Act (FLSA) when it failed to pay overtime for hours worked in excess of forty in a workweek, and violated the Indiana Wage Claim Statute when it failed to pay for all hours he worked up to forty.

The Defendant has moved for summary judgment on both claims. (Mot. for Summ. J., ECF No. 31.) The Defendant maintains that it is entitled to summary judgment on the FLSA claim because the Plaintiff was paid for all hours that he certified he worked in accordance with the Defendant's time keeping procedures. For the claim for unpaid wages under the Indiana Wage Claim Act, the Defendant submits that it is entitled to judgment as a matter of law because the Indiana Department of Labor did not complete the administrative process that is in place for such claims. Additionally, the Defendant maintains that it overpaid the Plaintiff $5,774 in unemployment benefits, and that when this amount is offset, the remaining amount on the allegedly unpaid wages is negative or *de minimis*.

In response, the Plaintiff asserts that the Defendant is liable to pay for all hours that the

Defendant knew or could infer that the Plaintiff was working, which exceeded the 37.5 hours it paid him for. The Plaintiff does not agree with the Defendant's assessment of the administrative process followed for the Indiana Wage Claim, and leaves the Court to decide whether the $5,774 in overpaid unemployment benefits may be offset.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in his favor; if she is unable to "establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted.

## STATEMENT OF FACTS

**A.     The Plaintiff's Employment and Compensation**

The Plaintiff worked as a field technician in the office of the Tippecanoe County Surveyor from July 2009 to September 2010. He was paid about $30,000 per year based on a work week of 37.5 hours. The Plaintiff's regular work period was from 8:00 a.m. to 4:30 p.m. with an hour off for lunch. Non-exempt employees in the Surveyor's office, like the Plaintiff, were paid on a semi-monthly basis and earned compensatory time for hours worked above 37.5 in a week.

During the period of the Plaintiff's employment, the Defendant's process for submitting

compensable time required employees to sign a Tippecanoe County Employee Attendance Report, which contained the employee's certification that the Report was correct. The Plaintiff submitted 28 such Reports, and was paid for the time that was claimed on the Reports. In May 2010, the Defendant also began using a software program to track data related to pay, including hours worked, but did not consider the computerized time keeping program the official means of reporting time.

The Plaintiff's first pay period covered July 6 to July 15, 2009. According to the Plaintiff, he worked "several hours" more than 37.5 hours per week during the first week (Pl.'s Dep. 51, ECF No. 31-1 at 4) because he was following the directive from his supervisor, Zach Beasley, to come to work early so that the field crew would be ready to go out the door by 8:00 a.m. However, when he recorded his actual hours on his Attendance Report, the office secretary, Brenda Garrison, returned the Report to him with reduced hours and told the Plaintiff he would not be paid for hours exceeding 37.5 in a workweek. (Pl.'s Dep. 23–24, ECF No. 37-1 at 2–3.) The Plaintiff signed and submitted the inaccurate Report. The Plaintiff spoke to Beasley three times during the first three months about getting paid for his early arrival. Beasley responded by telling the Plaintiff to talk to Garrison. The Plaintiff continued to come to work about 20 minutes early to collect the field maps and equipment that the crew needed at the worksite, and he continued to receive pay for the 37.5 hours he recorded. The Plaintiff claims that Garrison would provide him a "corrected" Report any time that he recorded more than 37.5 hours.

**B.     The Plaintiff's Termination from Employment and Unemployment Insurance**

On May 13, 2010, the Plaintiff sent an email to Beasley asking if he could take a class beginning in August which would take place during work hours. In the e-mail, he proposed to make up the work time missed for class by working through lunch and coming in early. Beasley told him he was welcome to take the class and miss work time but that he could not make up the time by coming in early or working through lunch because tracking time and supervising work would be too difficult. The Plaintiff indicated that he understood. The class began on August 23, 2010, and despite his supervisor's instructions not to do so, the Defendant believed that the Plaintiff attempted to make up the time by working through lunch and coming in early. The Plaintiff put notes in the computerized time keeping program that he "worked through lunch" on August 23, 25, 26, and 30. The Attendance Report was the official time document, but the software helped employees and the Defendant track time worked. The Defendant terminated the Plaintiff's employment on September 1. The Plaintiff sought unemployment benefits. At various steps throughout the administrative process and judicial review, it appeared that the Plaintiff was entitlement to benefits, and the Defendant paid $5,774 in unemployment benefits. The Indiana Supreme Court, on October 17, 2012, decided that the Plaintiff was terminated for just cause and was not entitled to benefits. Throughout the process, the Indiana Department of Workforce Development issued Statements of Benefit Charges. The Statement for January 2011 advises the Defendant that charges for the Plaintiff are potential credits to the Defendant's account. The Statement further provided:

> A determination was made and you were found not liable for these charges. But because you have chosen to make payment in lieu of contributions for Unemployment Insurance, your account cannot be credited for these charges unless or until the claimant(s) refund the overpayment. Your Account will be

credited as the claimant refunds the overpayment in full or in monthly installments.

(Jan. 2011 Benefit Charge Statement, ECF No. 31-8 at 55.) The Plaintiff has not repaid the money he received as unemployment benefits.

**C.     Wage Claim Application with Indiana Department of Labor**

On July 8, 2011, the Indiana Department of Labor received the Plaintiff's Application for Wage Claim for "[n]on-payment of regular hours worked over 37.5 hrs/week" and "[n]on-payment of overtime hours worked over 40 hrs/week." (Application, ECF No. 31-2 at 10.) The instructions on the form directed the applicant to show mathematically how he calculated his claim, to list the dates of nonpayment, including hours worked each day with beginning and ending times, and attach supporting documentation. As part of the application, the Plaintiff declared: "Pursuant to IC 22-2-9-5, I hereby assign to the Commissioner of Labor all my rights, title, and interest in and to the above certified claim for processing in accordance with the provisions of IC 22-2-9-1, *et seq.*"

The Application was provided to the Office of the Attorney General, accompanied by a letter from Janeen A. Weldy, the assistant to Attorney Ronald E. Weldy, which requested:

> Pursuant to Indiana Code 22-2-9-4(b), please issue the undersigned a referral letter from the Indiana Attorney General to enforce the rights of James Melton to collect wages from his former employer, Tippecanoe County or its successor. **The amount of wages due does not exceed $6,000.00.**

(July 8, 2011, Letter, ECF No. 31-2 at 12.)

On July 20, 2011, a deputy attorney general wrote a letter to Attorney Weldy, advising that the Office of the Attorney General had "no objection to your pursuing such claims and, to

5

the extent that it is authorized to refer the case to your office for action, hereby does so." (July 20, 2011, Letter, ECF No. 31-2 at 9.) The letter stated that the Office of the Attorney General made no finding as to any issues that might have been construed as having been raised by the complaint. The Plaintiff initiated suit on July 22, 2011.

## ANALYSIS

**A.     FLSA Claim**

The Fair Labor Standards Act guarantees that employees who work "for a workweek longer than forty hours" receive compensation for the employment in excess of forty hours at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1)(C).

The Plaintiff claims that his time records were not accurate, and that the inaccuracy was the result of his employer advising him not to record any of his time over 37.5 hours in a workweek. Employers bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by an employee. *See* 29 U.S.C. § 211(c); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 314–15 (7th Cir. 1986). However, the Plaintiff bears the burden of proving he performed overtime work for which he was not compensated. *Anderson v. Mt.Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), superseded on other grounds by Portal to Portal Act of 1947, 29 U.S.C. §§ 251–62. In addition, an employee is not considered to be "employed" unless he is "suffer[ed] or permit[ted] to work." 29 U.S.C. § 203(g). Under this definition of employ, the Plaintiff must show that the Defendant had "actual or constructive knowledge" of his overtime work. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir.

2011) (holding that the FLSA does not "requir[e] the employer to pay for work it did not know about, and had no reason to know about"); *see also* 29 C.F.R. § 785.11 (stating that work that the employer does not request may still be suffered or permitted if the "employer knows or has reason to believe that he is continuing to work and the time is working time").

The Plaintiff has set forth evidence to bring the accuracy of the Defendant's time keeping records into question. In such cases, where the employer fails to keep proper and accurate records, an employee meets the burden of establishing that he worked hours for which he was not compensated "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The burden then shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inferences to be drawn from the employee's evidence. *Anderson*, 328 U.S. at 688.

The *only* evidence the Plaintiff designates concerning the hours he actually worked is his testimony that his supervisor told him to be at work before 8:00 a.m. so that he would have the paperwork and equipment ready for the crew to leave at 8:00 a.m, and that he subsequently arrived about 20 minutes before 8:00 a.m. to complete this prep work. An additional 20 minutes each work day, however, would not equate to more than 40 hours in a week. The most the 20 minutes would have added was 1 hour and 40 minutes, which would have brought his total time to 39.2 hours. "In an action under the FLSA for overtime wages, the plaintiff must establish a *prima facie* case by showing that he or she worked in excess of forty hours in a work-week." *Adkins v. Mid-Am. Growers, Inc.*, 831 F. Supp. 642, 644 (N.D. Ill. 1993) (citing 29 U.S.C.

§ 207). Here, the Plaintiff's evidence regarding the amount and extent of his work does not create a reasonable inference that he worked more than 40 hours in a week, and the Defendant is entitled to summary judgment on the Plaintiff's overtime claim.

It is worth noting that the Plaintiff appears to believe that it was unnecessary in response to the Defendant's request for summary judgment to provide the details and the evidentiary support regarding the hours he worked. In response to the Defendant's designated evidence and accusation that the Plaintiff's memory with respect to the hours he has claimed in discovery responses for this litigation is unreliable, the Plaintiff asserts that it is a credibility issue that should be decided at trial, not on summary judgment. (Pl.'s Mem. 7 n.2, ECF No. 38 (stating that he will not address "this premature argument").) In making this assertion, the Plaintiff excuses himself from providing any evidence of his actual hours, save for his testimony regarding the morning preparation work. But even in the summary judgment context, the Plaintiff cannot "benefit from a favorable view of the evidence," unless he shows "that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009); *see also Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (stating that a district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010)). The only reasonably contestable issue created by the Plaintiff's evidence is whether the Plaintiff worked 37.5 hours or 39.2 hours in a week.

**B.     Indiana Wage Claim**

The Plaintiff asserts a claim under Indiana's Wage Claim Statute, which provides that, "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred." Ind. Code § 22-2-9-2(a). The federal statute that allows supplemental jurisdiction of state law claims also provides that the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that established law of this circuit is that the "usual practice" is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial). Upon consideration of judicial economy, convenience, fairness, and comity, *see Wright*, 29 F.3d at 1251, this Court does not find a basis to retain jurisdiction of the case. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (identifying three situations in which jurisdiction over supplemental state claims should be retained even though the federal claims have dropped out). Additionally, the claim raises a complex issue of state law related to exhaustion and what it means for a case to "work its way through the proper channels—the DOL and, if need be, the Attorney General—before it may be brought in court," *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 301 (Ind. Ct. App. 2009). *See* 28 U.S.C. § 1367(c)(1) (providing that a district court may decline to exercise supplemental jurisdiction over claims that raise a

novel or complex issue of state law). The potential setoff issue is also uniquely tied to Indiana unemployment benefits law. Therefore, this Court declines to exercise supplemental jurisdiction over the Plaintiff's state law wage claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART the Defendant's Motion for Summary Judgment. The Clerk will enter judgment in favor of the Defendant on the Plaintiff's federal wage claim, and will REMAND the Plaintiff's claim under Indiana's Wage Claim Statute to Tippecanoe County Court.

SO ORDERED on March 24, 2014.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION